UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| SANDRA DARLENE STALLINGS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:17-CV-516-DCP |
| | ) |
| ANDREW M. SAUL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 15]. Now before the Court is Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 16 & 17] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 18 & 19]. Sandra D. Stallings ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Nancy A. Berryhill ("the Commissioner"). For the reasons that follow, the Court will **GRANT IN PART** Plaintiff's motion and **DENY** the Commissioner's motion.

**I. PROCEDURAL HISTORY**

On August 6, 2014, Plaintiff protectively filed an application for disability insurance benefits and supplemental security income benefits pursuant to Title II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq.*, claiming a period of disability that began

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019, during the pendency of this case. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the Defendant in this case.

on May 7, 2013. [Tr. 10, 89]. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 147–48]. A hearing was held on October 19, 2016. [Tr. 32–58]. On January 13, 2017, the ALJ found that Plaintiff was not disabled. [Tr. 10–20]. The Appeals Council denied Plaintiff's request for review on October 5, 2017 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on November 30, 2017, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.
>
> 2. The claimant has not engaged in substantial gainful activity since May 7, 2013, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: obesity, osteoarthritis of the lumbar spine and bilateral knees, diabetes mellitus type II, neovascular age-related macular degeneration of the left eye, headaches, chronic obstructive pulmonary disease (COPD), anxiety, and major depressive disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and

416.967(b). She can occasionally climb ramps or stairs. She can never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, or crawl. She should avoid concentrated exposure to extreme cold, humidity, and pulmonary irritants. She can perform no job requiring binocular vision. She is able to perform simple, routine, and repetitive tasks. She is limited to work where interaction with supervisors and co-workers is occasional and there is no interaction with the general public. She is limited to work where changes in the workplace are infrequent and gradually introduced.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 1, 1966, and was 46 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 7, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 12–20].

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the

procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

**IV. DISABILITY ELIGIBILITY**

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must

prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

V.  **ANALYSIS**

Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence because the medical record does not support the ALJ's finding that she could perform a range of light work and stand/walk a total of six hours in an eight-hour day. [Doc. 17 at 11–15]. Additionally, Plaintiff maintains that the ALJ's assignment of little weight to the opinion of examining psychologist, Kevin Blanton, Ph.D., is not supported by substantial evidence, as the ALJ failed to provide legitimate reasons for why Dr. Blanton's opinion was rejected. [*Id.* at 15–17]. The Court will address Plaintiff's specific allegations of error in turn.

A.  **Plaintiff's Ability to Stand and Walk**

Plaintiff challenges the ALJ's finding that she could perform a range of light work, as well as that she could stand and/or walk for a total of six hours in an eight-hour day. [Doc. 17 at 12]. Plaintiff asserts that nonexamining state agency consultant, Thomas Thrush, M.D. opined that she could stand and/or walk for a total of five hours, while examining consultant Jeffrey Summers, M.D. opined that she could only stand or walk for four hours in an eight-hour workday. [*Id.*]. Therefore, Plaintiff claims that the ALJ "failed to explain why she rejected the medical opinions of multiple physicians (without a dissenting medical opinion) as to Plaintiff's ability to stand and walk." [*Id.* at 11]. The Commissioner asserts that the ALJ provided an explanation for the weight assigned to both Dr. Thrush and Dr. Summers' opinions, and that the ALJ's finding regarding Plaintiff's ability to stand and walk is supported by substantial evidence. [Doc. 19 at 8–14].

Dr. Summers consultatively examined Plaintiff on January 5, 2015. [Tr. 372–76]. Dr. Summers noted that Plaintiff reported problems with seizures and her breathing, as well as arthritis and diabetes. [Tr. 372]. On examination, Dr. Summers found that Plaintiff was morbidly obese with a BMI of 41, that her neurological exam was normal, and that her strength was 5/5 at all major muscle group areas. [Tr. 374]. Further, Plaintiff exhibited a negative straight leg raise bilaterally, as well as flexion at the waist to 60 degrees, extension at the waist to fifteen degrees, lateral flexion at the waist to twenty degrees left and right, and flexion of her knees to 120 degrees on the left and 115 degrees on the right, with extension of both knees to zero degrees. [*Id.*]. Plaintiff's grip strength was 5/5 bilaterally, and Plaintiff demonstrated an abnormal gait while having difficulty climbing on to and off of the examination table. [*Id.*].

Accordingly, Dr. Summers found that Plaintiff exhibited no clinical signs of end-organ damage from diabetes, while she did have decreased range of motion at her lumbar spine and both knees, and an abnormal gait. [Tr. 375]. Dr. Summers also noted clinical evidence of moderate obstructive lung disease, while no abnormal neurologic findings were present. [*Id.*]. Therefore, Dr. Summers opined that Plaintiff would have difficulty bending, stooping, kneeling, squatting, crouching, crawling, climbing, and lifting greater than twenty pounds, as well as standing and walking for greater than two hours continuously or four hours total in a single workday. [*Id.*]. Dr. Summers opined that Plaintiff would have difficulty performing moderate to heavy exertion, as well as working in an environment with a dusty condition, temperature extremes, or high humidity. [*Id.*]. Further, Dr. Summers found that Plaintiff should avoid working from height, around moving equipment, or working in areas where she could danger herself or others should she have a seizure. [*Id.*]. However, Dr. Summers did opine that Plaintiff appeared capable of sedentary and low levels of exertional activities in a stable work environment. [*Id.*].

Dr. Thrush reviewed the medical evidence of record at the initial level of the agency's review, and opined that Plaintiff could occasionally lift and/or carry up to twenty pounds, and frequently lift and/or carry ten pounds. [Tr. 82]. Additionally, Dr. Thrush found that Plaintiff could stand and/or walk for a total of five hours, and could sit for a total of six hours in an eight-hour workday. [*Id.*]. Next, Dr. Thrush opined that Plaintiff could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl, but that Plaintiff could never climb ladders, ropes, or scaffolds. [*Id.*]. Lastly, Dr. Thrush found that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, or hazards. [Tr. 83].

In the disability decision, the ALJ reviewed Dr. Summers' opinion and assigned "some weight" to the opinion; however, she afforded little weight to the portion of the opinion regarding the stand/walk restrictions. [Tr. 17]. The ALJ found that this assessed limitation was overly restrictive and not supported by the examination findings and the other objective medical evidence of record. [*Id.*]. Next, the ALJ assigned great weight to the remainder of the opinion, finding that it was supported by the examination, as well as Plaintiff's reported daily activities. [*Id.*]. The ALJ also afforded little weight to the stand/walk restrictions in Dr. Thrush's opinion, stating that the medical record supported a finding that Plaintiff could stand/walk for a total of six hours in an eight-hour day. [Tr. 18]. Therefore, the ALJ found that Plaintiff had the RFC to perform a range of light work, and that the medical record supported Plaintiff being able to stand/walk for a total of six hours in an eight-hour day. [Tr. 16–17].

Plaintiff claims that the ALJ improperly found that she was able to stand/walk for a total of six hours, in contrast to the medical opinions of record, because the ALJ found that Plaintiff "is able to care for her mother and engage in daily activities discussed in detail above, with little physical impediment." [Doc. 17 at 12]; *see* [Tr. 17]. Further, Plaintiff claims that this error is

8

harmful because due to her closely approaching advanced age category, as well as limited education and unskilled work history, she would have been found disabled due to the Medical Vocational Guidelines if the ALJ found her limited to sedentary work. [Doc. 17 at 15].

A claimant's RFC is the most that claimant can do despite his or her impairments. 20 C.F.R. § 404.1545(a)(1). In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). An ALJ is responsible for determining a claimant's RFC after reviewing all the relevant evidence of record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727–28 (6th Cir. 2013). "[W]hile an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his or her own lay medical opinion for that of a treating or examining doctor." *Smiley v. Comm'r of Soc. Sec.*, 940 F. Supp. 2d 592, 600 (S.D. Ohio 2013) (internal quotation marks and brackets omitted).

In *Baker v. Berryhill*, another court within this District recently summarized the relevant case law regarding "when there is one medical opinion that is at least partially rejected by the ALJ," stating that:

> Does the ALJ impermissibly "play doctor" when he formulates an RFC that is not supported by the expert medical opinion? Some district courts have held that "the ALJ 'must generally obtain a medical expert opinion' when formulating the RFC unless the 'medical evidence shows relatively little physical impairment' such that the ALJ can permissibly render a commonsense judgment about functional capacity[.]" *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 828 (E.D. Mich. 2017). Some have required an RFC determination to be supported by a medical opinion. *See, e.g.*, *Wyatt v. Comm'r of Soc. Sec.*, No. 12-11406, 2013 WL 4483074, at *16 (E.D. Mich. Aug. 19, 2013) ("ALJ RFC determinations must be supported by medical opinions."). Those cases seem to reflect the consensus that ALJs are not

9

> qualified to translate or interpret raw medical data, such as MRIs, or other diagnostic tests, in reaching a RFC assessment.

No. 2:17-CV-175-MCLC, 2019 WL 1560538, at *3 (E.D. Tenn. Feb. 13, 2019). Additionally, in *Rudd v. Commissioner of Social Security*, the Sixth Circuit found that an ALJ "was not required to base her [RFC] determination on a medical opinion" where the plaintiff alleged that the RFC was not supported by substantial evidence because no physician opined that Plaintiff could perform the standing and walking requirements of light work. 531 F. App'x at 727–28.

"Although the RFC must be supported by evidence of record, it need not correspond to, or even be based on any specific medical opinion." *Simon v. Comm'r of Soc. Sec.*, No. 2:16-CV-259, 2017 WL 1017733, at *6 (S.D. Ohio Mar. 16, 2017) (citing *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015)), *report and recommendation adopted by*, 2017 WL 3172717 (S.D. Ohio July 25, 2017). An ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering the RFC. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). "The Sixth Circuit has repeatedly upheld ALJ decisions where the ALJ rejected medical opinion testimony and determined RFC based on objective medical evidence and non-medical evidence." *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2019 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (internal citations omitted).

On the other hand, "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (citation and internal quotation marks omitted). "[C]ourts have stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data." *Allen v. Comm'r of*

*Soc. Sec.*, No. 12-15097, 2013 WL 5676254, at *15 (E.D. Mich. Sept. 13, 2013), *report and recommendation adopted by*, 2013 WL 5676251 (E.D. Mich. Oct. 18, 2013) (collecting cases).

Accordingly, the Court cannot find that substantial evidence supports the ALJ's RFC determination; as the ALJ did not base her determination on any medical opinion, nor did she provide substantial evidence to support her finding that Plaintiff had the ability to stand/walk for a total of six hours in an eight-hour day. "While the ALJ may certainly depart from a medical opinion in assessing a plaintiff's functional capabilities, the ALJ may not draw conclusions without citing to substantial evidence in support." *See Lane v. Berryhill*, No. 3:16-cv-164-TAV-HBG, 2017 WL 3402952, at *7 (E.D. Tenn. Aug. 8, 2017).

Here, the ALJ "has not provided a reasoned explanation" of why she rejected the medical opinions of record and found that Plaintiff had the capacity to perform the standing and walking requirements of light work. *See id.* With respect to Dr. Summers' opinion, the ALJ found that the assessed standing and walking limitation was overly restrictive and not supported by the examination findings and the other objective medical evidence of record. While an ALJ does not owe the same deference to the opinion of a consultative examiner as that of a treating physician, *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994), the ALJ did not discuss how the relevant medical evidence supported a finding that Plaintiff could stand or walk for six hours total in an eight-hour workday. Similarly, while discussing Dr. Thrush's opinion, the ALJ merely stated that "the evidence as a whole supports an ability to stand/walk a total of six hours in an eight-hour day." [Tr. 18].

Although the ALJ was not required to base her RFC determination on any medical opinion, the ALJ did not indicate in the disability decision what specific medical evidence her standing and walking assessment in the RFC determination was based on. *See Allor v. Colvin*, No. 15-14377,

11

2016 WL 7650798, at *5 (E.D. Mich. Nov. 28, 2016) (addressing standing and walking limitation in the RFC, and finding that "[w]hile the ALJ had no duty to defer to those opinions, they further undermine the Commissioner's argument that the ALJ's opinion is supported by substantial evidence; the only evidence upon which the ALJ relied to interpret the raw medical data and assess Allor's RFC was his own lay opinion"), *report and recommendation adopted by*, 2017 WL 2350061 (E.D. Mich. May 31, 2017).

Rather, the ALJ discounted the relevant portions of both medical opinions of record simply by stating that Dr. Summers' opinion was not supported by his examination findings or the objective medical record, and that the evidence as a whole supported a finding that Plaintiff could stand/walk for a total of six hours. In the disability decision, without the support of a medical opinion, the ALJ failed to explain what portions of the record led to her determination regarding Plaintiff's standing and walking limitations. *See Smiley v. Comm'r of Soc. Sec.*, 940 F. Supp. 2d 592, 601 (S.D. Ohio 2013) ("In reaching her RFC determination, the ALJ discounted all treating and state agency physician medical opinions, as well as numerous reports regarding the severity of Plaintiff's impairments, by relying on her own lay interpretation. Tellingly, the ALJ did not credit *any* medical opinion evidence in reaching her RFC assessment. Rather, the ALJ based her RFC assessment on her own medical conclusion that the entirety of the medical evidence of record would justify Plaintiff performing medium work.").

The ALJ subsequently assigned great weight to the remaining portions of Dr. Thrush and Dr. Summers' opinions, stating that they were supported by Plaintiff's daily activities, including her ability to care for her mother. [Tr. 17–18]. However, the ALJ did not detail how Plaintiff's reported daily activities led to her conclusion that Plaintiff could stand or walk for six hours in an eight-hour workday. *See, e.g.*, *Lane*, 2017 WL 3402952, at *7 ("In short, the Court finds that the

discussion of the medical evidence and reasons for rejecting the medical opinions of record reflect findings regarding plaintiff's ability to perform other activities, but do not offer any insight as to how the ALJ arrived at the conclusion that the Plaintiff could frequently reach overhead."); *Ledbetter v. Colvin*, No. 2:14-100-TMC, 2015 WL 4878712, at *7 (D. S.C. Aug. 14, 2015) (finding an ALJ improperly found that the plaintiff could stand or walk for six hours total in an eight-hour workday, as "although the ALJ wrote a detailed opinion, what stands out in this case is the lack of any accepted medical opinion . . . The question then becomes: upon what exactly did the ALJ base his RFC findings?"). The Court further finds that the medical evidence in the present case was not so sparse that the ALJ could make a "commonsense judgment about functional capacity." *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 828 (E.D. Mich. Mar. 28, 2017).

Ultimately, "the ALJ has not provided a reasoned explanation why [Plaintiff's standing and walking limitations are] less restrictive than found by every other medical source of record." *See Lane*, 2017 WL 3402952, at *7. Therefore, the ALJ's RFC determination is not supported by substantial evidence, and Plaintiff's assignment of error constitutes a basis for remand.

Plaintiff also claims that the ALJ was required to seek another medical opinion if she did not adopt the two medical opinions of record. Additionally, Plaintiff alleges that the RFC does not satisfactorily address her seizure disorder, and despite the fact that the ALJ found that Plaintiff's seizures did not constitute a severe impairment, the ALJ should have ordered a neurologic consultative examination.

However, as the Court has already stated, the ALJ is tasked with the sole responsibility of assessing a claimant's RFC, 20 C.F.R. § 404.1546(c), based on "specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *See* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The regulations provide that the agency "may

ask [the claimant] to have one or more physical or mental examinations or tests" if the claimant's "medical sources cannot or will not give us sufficient medical evidence" to determine whether the claimant is disabled. 20 C.F.R. § 416.917. Additionally, "[a]n ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001). The ALJ had no "special, heightened duty to develop the record" in this case because Plaintiff was represented by counsel. *Nabours v. Comm'r of Soc. Sec.*, 50 F. App'x 272, 275 (6th Cir. 2002). Further, it is not error to fail to obtain additional evidence where the record contains a "considerable amount of evidence" pertaining to the claimant's limitations. *Culp v. Comm'r of Soc. Sec.*, 529 F. App'x 750, 751 (6th Cir. 2013). Conversely, the ALJ has the ultimate responsibility to ensure that a claimant receives a full and fair hearing, *Richardson v. Perales*, 402 U.S. 389, 411 (1971), which includes a duty to fully and fairly develop the record. *See Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1111 (6th Cir. 1986).

Ultimately, the ALJ only has a duty to develop the record further when "the evidence in [the] case record is insufficient or inconsistent." 20 C.F.R. § 416.920b. Here, the ALJ did not find, and the record does not demonstrate, that the evidence before the ALJ was insufficient or inconsistent. "The burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. §§ 416.912(d), 416.913(d)). With respect to Plaintiff's argument that the ALJ was required to obtain another medical opinion, the Court has already stated that the RFC is not required to correspond to any specific medical opinion. "Here, plaintiff would have the ALJ develop the record further simply because she did not rely on any one opinion to support her RFC

determination . . . [but] the ALJ was not required to base her RFC finding on a medical source's opinion." *Lane v. Berryhill*, No. 3:16-CV-164-TAV-HBG, 2017 WL 3402952, at *6 (E.D. Tenn. Aug. 8, 2017).

Plaintiff also challenges the ALJ's failure to order an additional neurologic examination to consider her seizure disorder. However, the Commissioner correctly states that Plaintiff does not challenge the ALJ's finding that her seizure disorder did not constitute a severe impairment. In the disability decision, the ALJ reviewed the pertinent medical record and found that "[a]s there is no diagnosis of a seizure disorder, supported by objective medical evidence . . . the alleged seizure disorder is not a medically determinable impairment and is not a severe impairment." [Tr. 13]. While Plaintiff notes the mention of a seizure disorder in Dr. Summers' opinion, for example, the ALJ noted that Plaintiff underwent an EEG and MRI with Donald Wheatley, M.D. prior to the relevant period in the present case, but the studies returned as normal. [*Id.*]; *see* [Tr. 277–91]. In his opinion, Dr. Summers also noted that no abnormal neurologic findings were present. [Tr. 375]. Additionally, the ALJ stated that although a medication list indicated that Plaintiff was prescribed Gabapentin for neuropathy and seizures by Matthew Gent, FNP, Mr. Gent did not mention a seizure disorder in a summary of Plaintiff's impairments. [Tr. 13]; *see* [Tr. 384]. Lastly, the ALJ reviewed that Plaintiff has no emergency room visits for seizures, and she testified that she drives two to three times a month. [*Id.*]. Accordingly, the Court finds that the ALJ properly found that Plaintiff's seizure disorder did not constitute a severe impairment, and thus, was not required to order an additional neurologic examination.

### B. Dr. Blanton's Opinion

Plaintiff challenges the ALJ's assignment of little weight to Dr. Blanton's opinion, claiming that the ALJ "failed to provide legitimate, much less convincing[,] reasons as to why the

professional opinion of Dr. Blanton should be rejected." [Doc. 17 at 17]. The Commissioner asserts that the ALJ properly found that Dr. Blanton's opinion was inconsistent with Plaintiff's reported daily activities. [Doc. 19 at 17].

Dr. Blanton consultatively examined Plaintiff on January 6, 2015, in addition to reviewing certain provided medical records. [Tr. 377–82]. Dr. Blanton conducted a clinical interview of Plaintiff, as well as reviewed her personal and family history, work history, and substance abuse history. [Tr. 377–79]. During a mental status examination, Plaintiff was able to perform serial 3s and name five of five correct, and provide appropriate solutions to two simple social situations, but was only able to recall one of three simple objects after a brief delay. [Tr. 379]. Dr. Blanton noted that Plaintiff's intellectual functioning was estimated to be in the borderline to low average range, and her full-scale IQ score was 68. [Tr. 380].

Therefore, Dr. Blanton opined that Plaintiff was moderately to severely impaired in the ability to understand and remember instructions, as well as the ability to sustain attention and concentration, due to her intellectual deficits and mood and anxiety difficulties. [Tr. 381]. Additionally, Dr. Blanton found that Plaintiff was moderately to severely impaired in her ability to interact with people, as well as in the ability to adapt to changes in routine or work-like settings. [Tr. 382].

In the disability decision, the ALJ reviewed Dr. Blanton's opinion and afforded the opinion little weight "[t]o the extent Dr. Blanton assigns more than moderate limitations in any area." [Tr. 18]. The ALJ found that the total record supports "no more than moderate limitations," as Plaintiff reported that she travels, cares for her mother, uses a laptop to research topics, and sees her boyfriend daily. [*Id.*]. Lastly, the ALJ noted that although Dr. Blanton found that Plaintiff

16

achieved a full-scale IQ of 68, the opinion also reported her academic skills at the 12.2 grade level. [*Id.*].

Opinions from non-treating sources are never assessed for controlling weight but are evaluated using the regulatory balancing factors set forth in 20 C.F.R. § 416.927(c). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). These opinions are weighed "based on the examining relationship (or lack thereof), specialization, consistency, and supportability." *Id.* (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)). An ALJ is only required to provide good reason for explaining the weight assigned to the opinion of a "treating source." 20 C.F.R. § 416.927(c)(2); *see Perry v. Comm'r of Soc. Sec.*, 501 F. App'x 425, 426 (6th Cir. 2012) ("An ALJ need not 'give good reasons' for the weight he assigns opinions from physicians who, like Dr. Pickering, have examined but not treated a claimant."). In fact, opinions from one-time consultative examiners are not due any special degree of deference. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

Plaintiff challenges the ALJ's use of her reported daily activities to discount Dr. Blanton's opinion. Plaintiff alleges that "[o]ne cannot be found capable of work merely because" of the listed daily activities. [Doc. 17 at 17]. However, the Commissioner correctly asserts that the ALJ considered these daily activities to appropriately weigh Dr. Blanton's opinion, rather than solely to assess whether Plaintiff was disabled. *See, e.g.*, *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 441 (6th Cir. 2016) (while addressing a credibility determination, noting that "[t]he ALJ cited these activities as evidence that Shepard's testimony about the severity of her symptoms and her

limited lifestyle was 'not entirely credible,' not to demonstrate that she was capable of light work").

As the Court has already stated, the ALJ is tasked with evaluating the opinion of a consultative examiner based upon, in part, the consistency and supportability of the opinion. 20 C.F.R. § 404.1527(c). Here, the ALJ properly found that Dr. Blanton's opinion was in conflict with Plaintiff's reported daily activities, which the ALJ previously discussed in greater detail in the disability decision. *See, e.g.*, *Dyer v. Social Security Administration,* 568 F. App'x 422, 427 (6th Cir. 2014) (noting that plaintiff's daily activities of "personal hygiene and grooming, cooking, cleaning, laundry, driving, shopping, visiting with friends and family, caring for her ill mother, and taking care of her pet bird" constituted substantial evidence in support of a finding that a claimant is not disabled and assigning little weight to treating physician's opinion); *Hobbs v. Comm'r of Soc. Sec.*, No. 5:18-CV-446, 2019 WL 315046, at *13 (N.D. Ohio Jan. 23, 2019) ("The ALJ also complied with the regulations when he explained that consulting physician Dr. Vogelgesang's opinion was due little weight because it was inconsistent with his own examination notes, Hobbs' reports that he improved with conservative care, and Hobbs' reported daily living and work activities.").

Accordingly, the Court finds that substantial evidence supports the ALJ's assignment of little weight to Dr. Blanton's opinion that Plaintiff had more than moderate mental impairments. Although the Court finds that the ALJ properly found that Dr. Blanton's opinion was entitled to little weight, as the Court has already found that the ALJ's RFC determination is not based upon substantial evidence, on remand, the ALJ should also reconsider Dr. Blanton's opinion.

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Pleadings [**Doc. 16**] will

be **GRANTED IN PART**, and the Commissioner's Motion for Summary Judgment [**Doc. 18**] will be **DENIED**. This case will be **REMANDED** to the SSA for the ALJ to reconsider the medical opinion evidence of record in the RFC determination consistent with this opinion.

ORDER ACCORDINGLY.

_Debra C. Poplin_
Debra C. Poplin
United States Magistrate Judge